UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TERRANCE J. SHAW,

               Plaintiff,

v.

WISCONSIN DEPARTMENT OF
CORRECTIONS, PAUL S. KEMPER,
ROBIN DIEBOLD, JOHN DOE, and
TED SERRANO,

               Defendants.

Case No. 21-CV-49-JPS

**ORDER**

---

      Plaintiff, Terrance J. Shaw, a former prisoner, brings this action under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act. ECF No. 1. On November 23, 2021, pursuant to 28 U.S.C. § 1915A, the Court screened his complaint, dismissed the case for Plaintiff's failure to state a claim, and entered judgment accordingly. ECF Nos. 6, 7. On November 16, 2022, the Seventh Circuit Court of Appeals vacated the judgment and remanded the case back to this Court for further proceedings in accordance with its ruling. ECF No. 15.

      On December 16, 2022, the Court entered a scheduling order with amended pleadings due by January 9, 2023. ECF No. 21. On January 9, 2023, Plaintiff filed a first amended complaint. ECF No. 22. On January 10, 2023, Defendants filed a motion for screening of the amended complaint and to set a deadline to answer the amended complaint. ECF No. 23. The Court will grant Defendants' motion. The remainder of this Order screens the

amended complaint and will set a deadline for Defendants' answer to the amended complaint.

1.  **SCREENING THE COMPLAINT**

    1.1  **Federal Screening Standard**

    Under the Prisoner Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

    In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

    To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

### 1.2 Plaintiff's Allegations

Plaintiff names as defendants Wisconsin Department of Corrections ("DOC"), Paul S. Kemper, ("Kemper"), Robin Diebold ("Diebold"), Defendant Doe ("Doe"), and Ted Serrano ("Serrano"). Because Plaintiff is now represented through counsel, the Court reiterates Plaintiff's factual allegations verbatim. *See* ECF No. 22 at 4–8.

Terrance Shaw ("Shaw") is confined to a wheelchair and during his time at Racine, could not travel any significant distance without the aid of a wheelchair or other mobility device. One of the harsh realities of Shaw's disability is that, without the full use of his legs, he cannot use a standard toilet. Shaw, like others with similar disabilities, requires the use of specialized bathroom, colloquially know as a "handicap stall," so that he can use the safety bars to position himself from his wheelchair to the toilet by using his upper body. If a restroom is not properly equipped for a disabled individual, it is impossible for Shaw to use the toilet. He simply lacks the mobility to position himself in a way that allows him to use the restroom without falling to the floor.

While Racine Correctional Institute has stalls, the staff there does nothing to ensure they are not being used and occupied by non-disabled inmates when a disabled inmate needs to use the restroom. This results in a situation where, if one of the handicapped stalls is occupied by an able-bodied inmate, someone like Shaw has no option but to simply wait until the stall becomes available. If the stall did not free up in time, Shaw was forced to humiliatingly relieve himself in his own clothes. This is a painful reminder of just one of the many ways that Shaw is at the

Page 3 of 9

Case 2:21-cv-00049-JPS   Filed 01/23/23   Page 3 of 9   Document 24

whims of able-bodied individual's decisions to violate the Americans with Disabilities Act and the Rehabilitation Act. ("ADA/RA").

Despite Shaw's complaints to Racine staff that they needed to ensure that when a handicapped individual needed to use the restroom a proper stall was available, staff did no such thing. This meant that while in Racine Shaw often found himself trapped outside of one the few bathroom doors that could accommodate his disability, unable to use any of the other facilities, hoping that the able-bodied inmate inside would finish in time. This was a common occurrence, and despite Shaw's continuous complaints to staff at Racine, Shaw was forced to soil himself on multiple occasions due to the unavailability of a handicap bathroom stall during the year of 2018.

Specifically, in early 2018 Shaw informed Defendant Kemper, Diebold, Serrano, and Doe, about the lack of ADA/RA compliance and the painful and humiliating consequences he suffered as a result. Shaw told Doe about his difficulties with not having access to the proper bathroom accommodations. Doe assured Shaw that he would take not[e] of the issue and pass it up the chain of command. Sgt. Doe did no such thing and in fact took no action whatsoever to provide Shaw with access to bathroom facilities that could accommodate his disability.

On April 30, 2018, Shaw wrote to Diebold, explaining how the lack of any practice that ensured that Shaw had access to a useable bathroom resulted in Shaw experiencing the physical pain and humiliation of having to hold out in desperate wait for the stall to become unoccupied before he was forced to soil himself. Diebold did not respond and took no action whatsoever to provide Shaw with access to bathroom facilities that could accommodate his disability.

On May 2, 2018, Shaw filed an inmate complaint, detailing the suffering he had experienced due to the lack of an available bathroom. On May 16, 2018, Shaw wrote to Serrano, explaining how the lack of any practice that ensured that Shaw had access to a useable bathroom had resulted in Shaw experiencing the physical pain and humiliation of having to hold out in desperate wait for the stall to become unoccupied before he was forced to soil himself. Serrano did not respond and took no action whatsoever to provide Shaw with access to bathroom facilities that could accommodate his disability.

On May 18, 2019, Shaw once again was forced to soil himself due to the lack of access to a proper bathroom. Shaw then filed an addendum to his May 2, 2018, complaint stating: "Today I again had to mess my pants because there was an able-bodied inmate in both of the disability handicapped bathroom stalls . . . I went about 180-feet painfully dragging me and my wheelchair by my one foot . . . that's when I had to mess my pants. I was unable to hold it any longer. This the third (3rd) time I've had to endure 8th amendment pain, suffering and humiliation."

On June 12, 2018, DOC dismissed Shaw's inmate complaint stating: "This Complaint is in direct relation to another inmate's actions, which are out of the institution's control." The "institution" referenced is a prison, a place designed to control and confine the actions of the people who have been sentenced to spend time inside of it. On June 28, 2018, Warden Paul S. Kemper issued a Reviewing Authority's Decision in support of DOC's recommendation to dismiss Shaw's inmate complaint. Defendant Kemper, the warden in charge of Racine, was fully aware of the problems caused by Shaw's lack of access to a useable bathroom and took no action whatsoever to provide Shaw with access to bathroom facilities

that could accommodate his disability. DOC, despite being made aware through its employees and agents on multiple occasions, took no action whatsoever to provide Shaw with access to bathroom facilities that could accommodate his disability.

### 1.3 Analysis

Plaintiff alleges the following three claims: (1) 42 U.S.C. §§ 12111–213, Title II of the Americans with Disabilities Act ("ADA") claim against DOC; (2) Title 29 U.S.C. Section 794-94e, Rehabilitation Act ("RA") claim against DOC;[1] and (3) 42 U.S.C. § 1983 claim against Defendants Diebold, Doe, Serrano, and Kemper for violation of the Eighth Amendment of the United States Constitution. ECF No. 22 at 8-11.

First, Plaintiff may proceed against DOC on ADA and RA claims. Title II of the Americans with Disabilities Act (ADA) "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)

---

[1] The heading names Racine Correctional Institute as the defendant for this claim. The text of the amended complaint, however, names DOC as the responsible party. The DOC is a proper defendant to these claims, as that is the "public entity" that administers the programs and benefits to which he seeks access and is the entity that would be responsible for providing him with a reasonable accommodation. *See* 42 U.S.C. §§ 12131(1)(B) & 12132; 29 U.S.C. § 794; Wis. Stat. § 301.04 (providing that the Department of Corrections may sue and be sued). As such, the Court interprets the RA claim to be against DOC.

(quoting 42 U.S.C. § 12132). Analysis under the Rehabilitation Act (RA), 29 U.S.C. § 794, is essentially the same except that the RA includes an additional element requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical"). At the pleading stage, the Court finds that Plaintiff sufficiently states ADA and RA claims against DOC.

Second, the Court will allow Plaintiff to proceed on an Eighth Amendment claim against Diebold, Doe, Serrano, and Kemper. Plaintiff's amended complaint alleges that these defendants knew there was a strong likelihood that if Plaintiff was not given access to a useable bathroom, he would suffer the physical pain associated with having to desperately hold on until a useable bathroom was provided as well as the pain and humiliation associated with soiling oneself from lack of a useable restroom. ECF No. 22. at 10–11.

The lack of access to toilet facilities for a relatively short period of time may not be sufficiently serious to state a claim of constitutional dimension. *See, e.g., Clark v. Spey*, No. 01–C–9669, 2002 WL 31133198, at *2–3 (N.D. Ill. Sept. 26, 2002) (inmate held in cold cell with no toilet for several hours overnight failed to state a claim); *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1188 (10th Cir. 2003) (pretrial detainee held for five hours in cell lacking a toilet did not state claim for cruel and unusual punishment). However, denying bathroom access to an inmate who cannot control his bladder due to his disability, forcing him to urinate on himself, and then making him sit in his urine-soaked clothes for two hours, suggests an Eighth Amendment violation. *See Phelps v. Godinez,* No. 15-CV-073-SMY, 2015 WL 681007, at *4 (S.D. Ill. Feb. 17, 2015) (citing *Thomas v. Illinois*, 697

F.3d 612, 614–15 (7th Cir. 2012). At the pleading stage, the Court finds that Plaintiff may proceed on an Eighth Amendment claim against Diebold, Doe, Serrano, and Kemper.

## 2. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** ADA claim against DOC.

**Claim Two:** RA claim against DOC.

**Claim Three:** Eight Amendment deliberate indifference claim against Diebold, Doe, Serrano, and Kemper.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Defendants' motion for screening of the amended complaint and to set a deadline to answer the amended complaint, ECF No. 23, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants DOC, Kemper, Diebold, Doe, and Serrano;

**IT IS FURTHER ORDERED** that Defendants shall file a responsive pleading to the amended complaint within **twenty-one (21) days**;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted.

Dated at Milwaukee, Wisconsin, this 23rd day of January, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge